# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 8381 | **DATE** | 10/8/2003 |
| **CASE TITLE** | Central States S.E. and S.W. Vs. Susie Bell Washington Gray, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: we grant defendant Gwendolyn Gray's motion for summary judgment and deny Susie Gray's motion for summary judgment. This is a final and appealable order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | OCT 10 2003 | |
| | Notified counsel by telephone. | | date docketed | 21 |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| TBK | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice  mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, and HOWARD MCDOUGALL, trustee,<br><br>Plaintiff,<br><br>v.<br><br>SUSIE BELL WASHINGTON GRAY and GWENDOLYN BERNICE GRAY,<br><br>Defendants. | DOCKETED<br>OCT 1 0 2003<br><br>No. 02 C 8381<br>Paul E. Plunkett, Senior Judge |

## MEMORANDUM OPINION AND ORDER

This interpleader action comes before us on the cross-motions of defendant Susie Bell Washington Gray ("Susie") and defendant Gwendolyn Bernice Gray ("Gwendolyn") for summary judgment. For the following reasons, Susie's motion is denied and Gwendolyn's motion is granted. We find that Gwendolyn is John's "surviving spouse" and is entitled to the fifty percent surviving spouse benefit.

### Facts

The facts in this case are undisputed. John Henry Gray ("John") married Susie in December 1965 in Louisiana. They separated in 1970, and a formal judgment of separation was entered by the First Judicial District Court of Caddo Parish, Louisiana on August 18, 1971. No divorce decree was ever obtained. Undeterred, Susie then married Milton Lee ("Milton") in August 1973 in Louisiana and John married Patricia Gray ("Patricia") in October 1984, even though Susie and John's marriage



was never legally terminated. John divorced Patricia in June 1997 and married Gwendolyn in Texas in February 2000. John remained married to Gwendolyn until his death in May 2001. Susie is still married to Milton.

John was covered by the Central States, Southeast and Southwest Areas Pension Fund (the "Fund"). The Fund administers the Central States, Southeast and Southwest Areas Pension Plan, an employee pension benefit plan covered by ERISA[1] (the "Plan"). The Plan provides, among other benefits, a fifty percent Joint and Surviving Spouse lifetime benefit ("JSS Benefit") to the surviving spouse of a deceased Plan participant. The amount of the JSS Benefit varies with each recipient, depending upon the Plan participant's covered service, as defined in the Plan documents, and the age of the recipient.

Upon John's death, Gwendolyn applied for the JSS Benefit and the Fund paid her $305.97[2] each month from June 2001 through November 2001. Susie applied for the JSS Benefit in March 2002, stating that she was the surviving spouse of John. Uncertain as to who is John's surviving spouse, the Fund suspended payments to Gwendolyn and brought this interpleader action. The Fund has deposited $5,738.43 in an account with the Court for past due pension benefits and will make future JSS Benefit payments to whomever is determined to be John's surviving spouse.

---

[1] ERISA is the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, et seq.

[2] The Fund has since determined that Gwendolyn's JSS Benefit, should it be determined that she is the proper recipient, is $302.97 per month for life rather than $305.97. If Susie is the rightful recipient of the JSS Benefit, her monthly payment would be $314.05. (Compl. ¶¶ 6, 31.)

On June 23, 2003, Susie moved for summary judgment, claiming that she was still legally married to John at the time of his death and that the JSS Benefit should be paid to her. She submitted a supporting affidavit in which she states she was married to John on December 6, 1965 in Caddo Parish, Louisiana. She also states that she and John had one child, Kenneth, born in December 1966, that she and John separated in January 1970 but that they never divorced, and that she was still married to John at the time of his death in May 2001. (Susie Gray Mot. Summ. J. Ex. A.) She also submitted a copy of her and John's marriage license and a copy of the judgment of separation from a Louisiana court. (*Id.* Exs. B, C.) In addition, Susie has attached an opinion letter from Billy R. Casey, an attorney in Shreveport, Louisiana. Casey opined that, under Louisiana law, Susie and John were still legally married to each other at the time of John's death, but the community property between Susie and John ended on the date the legal separation was filed. Casey also opined that Susie was entitled to one-half of any 401K pension earned from the date of their marriage to the filing date of the legal separation and that under Louisiana law, Kenneth was entitled to the remainder of the 401K pension. (*Id.* Ex. D.)

Gwendolyn also filed a motion for summary judgment asserting her right to receive the JSS Benefit. In support, Gwendolyn submitted an affidavit which states that she was married to John in February 2000 and remained married to him until his death in May 2001. (Gwendolyn Gray Mot. Summ. J. Ex. 6.) Gwendolyn also submitted copies of Susie's petition for separation and custody, filed in Caddo Parish, Louisiana in June 1971, and judgment of separation, rendered in August 1971. (*Id.* Ex. 2.) Also submitted with her motion was a copy of Milton's affidavit for a marriage license, which indicates that Susie had no prior marriage, and a copy of her and John's marriage license, issued in Texas. (*Id.* Exs. 3, 5.)

## Discussion

This motion presents the following issue: who is John's "surviving spouse" and thus, the rightful recipient of the JSS Benefit – Susie, who married John, legally separated from him but never divorced him and then subsequently married another, or Gwendolyn, who participated in a marriage ceremony with John in 2000 and remained married to him until the time of his death?

We first look to the words of the Plan itself for guidance but find precious little there to help; we find a definition of "dependent child" but no definition of "spouse" or "surviving spouse." Because there is no federal domestic relations law and marriage and divorce are traditional subjects of state regulation, we must look to state law to determine who (Susie or Gwendolyn) is the "surviving spouse" under the Plan. *Croskey v. Ford Motor Company-UAW*, 2002 WL 974827, at *4 (May 6, 2002 S.D.N.Y.). Three states' laws are potentially applicable in this case: Illinois, where the Plan is administered; Louisiana, where Susie and John were married and where Susie continues to reside; and Texas, where Gwendolyn and John were married and lived at the time of John's death.

Gwendolyn argues that Illinois law should govern. In support of that position, she refers us to a section of the Plan which states: "All questions pertaining to the validity of construction of this Pension Plan shall be determined in accordance with the laws of the State of Illinois and, to the extent of pre-emption with the laws and regulations of the United States." (Compl. Ex. A §7.11.) Gwendolyn argues that under Illinois law, Susie should be equitably estopped from claiming to be John's lawful spouse. Susie intended to end her marriage to John, as evidenced by the legal separation, and presumably believed, in fact, that the marriage was legally terminated, as evidenced by Susie's subsequent marriage to Milton. According to Gwendolyn, it would be inequitable and

unfair to now allow Susie to reap the benefits of being John's spouse when Susie took advantage of the end of the marital relationship.

Gwendolyn argues that even if Illinois law does not apply, under Louisiana law, the result is the same. In Louisiana, even if a marriage is null due to some impediment, such as one party's prior undissolved marriage, civil effects still flow from that null marriage in favor of the party who contracted the marriage in good faith, that party being known as a "putative spouse." Gwendolyn argues that she contracted the marriage with John under a reasonable and honest belief that the marriage was valid and with no knowledge of the legal impediment. As a putative spouse, she claims she is entitled to the JSS Benefits.

Susie argues against the application of Illinois law, stating that this issue is not a matter of pension plan construction and that Illinois has no nexus with the issue involved. She argues instead for the application of Louisiana law and relies on Casey's legal opinion in support of her right to receive the JSS Benefits.

We do not find Louisiana law applicable; the only connection that state has with the parties is that it is where Susie currently lives, and where she and John were married and obtained their legal separation. Although neither Gwendolyn nor Susie addressed the applicability of Texas law, we find that law to be applicable here. The question before us concerns who is John's "surviving spouse," and it seems that the law of John's domicile at death provides the proper reference. *See Croskey*, 2002 WL 974827, at *5 (looking to law of insured's domicile at death to determine who is lawful widower in ERISA case because insured's domicile is state most interested in questions of insured's marital status).

Looking to Texas law, we find that Gwendolyn is the rightful recipient of the JSS Benefits. Like Louisiana, Texas has the concept of "putative spouse" and "putative marriage". "A putative marriage is one that was entered into in good faith by at least one of the parties, but which is invalid by reason of an existing impediment on the part of one or both of the parties." *Garduno v. Garduno*, 760 S.W.2d 735, 738 (Tex. App. 1988). Where a putative marriage exists, a putative spouse acting in good faith has the same right in property acquired during the marital relationship as if she were a lawful spouse. *Id.* at 739. We find that Gwendolyn and John's marital situation fits these circumstances. Good faith on the part of Gwendolyn is presumed; we have no reason to believe that she was aware that John's prior marriage to Susie was not dissolved. *See id.* at 740.

In addition, Texas courts have applied an acceptance-of-the-benefits doctrine to prevent one from collaterally attacking a divorce decree when one has previously accepted the benefits of the decree. *See Hawkins v. Hawkins*, 999 S.W.2d 171, 178 (Tex. App. 1999). The doctrine is based on the equitable principle of estoppel and precludes a litigant from accepting the benefits of a judgment and then subsequently challenging that portion of the judgment affording him those benefits. *See Carle v. Carle*, 234 S.W.2d 1002, 1004 (Tex. 1950). Although Susie and John never divorced, we find the principles expressed by this doctrine applicable here. Susie has accepted the benefit of the termination of her marital relationship with John for the past thirty years as she married Milton in

1973 and remains married to him.[3] *See Hawkins*, 999 S.W.2d at 178 (remarriage by a party to a divorce estops that party from attacking the marriage dissolution).

Our analysis of Texas law leads us to conclude that Gwendolyn is John's putative spouse, thus John's surviving spouse under the Plan and the proper recipient of the JSS Benefits. Moreover, this conclusion is consistent with Congress's goal of protecting the economic security of surviving spouses when it modified the survivor annuity provisions of ERISA in 1984 to make them more protective of surviving spouses. *See Boggs v. Boggs* 520 U.S. 833, 843-844 (1997). Nothing submitted to us leads us to reasonably conclude that Susie has economically relied on John since their separation or that she anticipated receiving a monetary benefit upon John's death because she was his spouse. *See Butler v. Bolinger*, 133 So. 778 (La. Ct. App. 1931) (a separation "a mensa et thoro" in Louisiana terminates the legal regime of community property).

Even if Illinois law applied, we would find the same result. First of all, we note that for certain domestic matters, Illinois relies on the principles contained in the Restatement (Second) of Conflicts (the "Restatement") to resolve conflict-of-laws questions. *In re Marriage of Adams*, 551 N.E.2d 635, 639 (Ill. 1990). Section 283 of the Restatement says: "The validity of a marriage will be determined by the local law of the state which, with respect to the particular issue, has the most significant relationship to the spouses and the marriage . . . ." Restatement (Second) of Conflict of

---

[3] We think it significant that Susie omitted certain relevant facts from her motion for summary judgment, namely that she married Milton in 1973 and remains married to him. We draw no conclusion, however, from the fact that Susie's prior marriage to John was omitted from Milton's marriage license application. (Gwendolyn Gray Mot. Summ. J. Ex. 3.) Gwendolyn states that Susie committed fraud by failing to include her prior marriage on the application. Susie correctly points out, however, that the affidavit application was made by Milton.

Laws § 283 (1971). This brings us back into the realm of Texas law, which we have already discussed.

Under Illinois substantive law, Gwendolyn is a putative spouse. The Illinois Marriage and Dissolution of Marriage Act says:

> Any person, having gone through a marriage ceremony, who has cohabited with another to whom he is not legally married in the good faith belief that he was married to that person is a putative spouse .... A putative spouse acquires the rights conferred upon a legal spouse ... whether or not the marriage is prohibited, under Section 212, or declared invalid, under Section 301. If there is a legal spouse or other putative spouse, rights acquired by the putative spouse do not supercede the rights of the legal spouse or those acquired by other putative spouses, but the court shall apportion property, maintenance and support rights among the claimants as appropriate in the circumstances and in the interests of justice.

750 ILCS 5/305 (1999). The state recognizes that Gwendolyn has certain rights as a putative spouse but also recognizes that Susie has certain rights. However, the statute demands that we apportion property and rights "as appropriate in the circumstances and in the interests of justice." Under this framework, we conclude that the JSS Benefits should be paid to Gwendolyn.

We come to this conclusion applying the same equitable principles discussed above. Illinois courts have applied the rule of estoppel in family law cases. "The rule of estoppel [is] founded upon the public policy of protecting the marital status and good character of innocent third persons ...." *Forest v. Forest*, 291 N.E.2d 880, 882 (Ill. App. Ct. 1973) (action to set aside divorce decree). We find the application of the rule of estoppel appropriate in this case. By accepting the benefits of a terminated marital relationship (by way of a judgment of legal separation) with John, it would be contrary to public policy to allow Susie to now reject the termination of the relationship and receive

insurance benefits as a surviving spouse.[4] *See Goodman v. Goodman*, 260 N.E.2d 257, 260 (Ill. App. Ct. 1970) (defendant's challenge to validity of divorce decree was barred by estoppel where defendant received substantial property from divorce).

The facts here lead us to only one conclusion: equity mandates that Gwendolyn, who married John in good faith and lived with him as his wife until his death, is John's surviving spouse under the Plan and the proper recipient of the JSS Benefits. Accordingly, defendant Gwendolyn Gray's motion for summary judgment is granted; defendant Susie Gray's motion for summary judgment is denied.

## Conclusion

For the reasons stated above, we grant defendant Gwendolyn Gray's motion for summary judgment and deny defendant Susie Gray's motion for summary judgment. This is a final and appealable order.

ENTER:

UNITED STATES DISTRICT JUDGE

DATED: 10-8-03

---

[4] In addition, we note that the vast majority of the benefits at issue were earned by John after the judgment of separation was final and during the time Susie was married to Milton.